

**SO ORDERED.**

**SIGNED this 13 day of March, 2009.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. |
| **LAURENCE FRANK SIEGEL** | **08-08957-8-ATS** |
| DEBTOR | |

**ORDER ALLOWING OBJECTION TO CLAIM**

The matter before the court is the objection filed by the chapter 13 debtor, Laurence Frank Siegel, to the $50,000 priority claim filed by his former spouse, Lyn K. Siegel. A hearing took place in Raleigh, North Carolina on March 3, 2009. The issue before the court is whether the claim is for a domestic support obligation as defined in 11 U.S.C. § 101(14A), and as such is a priority claim that, pursuant to §§ 1322(a)(2) and 1325(a)(1), must be paid in full through the debtor's plan.

Laurence Frank Siegel filed a petition for relief under chapter 13 of the Bankruptcy Code on December 12, 2008. Mr. Siegel and Lyn K. Siegel married in June 1981, and separated in June 1999. The Seigels had two children, who at the time of separation were 16 and almost 12. Prior to their separation, Mr. Siegel, an insurance salesman, was the family's breadwinner, and Ms. Seigel primarily took care of the children and the household. The debtor's salary, which was based on commissions, fluctuated between $50,000 and $60,000 per year, and Ms. Siegel, who had part time jobs, earned up to $4,000 annually.

The Seigels owned a home as tenants by the entirety in Durham, North Carolina, that was worth approximately $180,000, but which was subject to a mortgage of approximately $65,000. The residence was also encumbered by an equity line of credit with a balance of approximately $50,000. The line of credit had been established to provide funding for private school tuition, but was in fact used to pay household bills and expenses.

The Siegels entered into a Limited Separation Agreement in June 1999, but that agreement was modified by a Separation Agreement and Property Settlement dated January 19, 2001, which contains the provision on which Ms. Seigel bases her priority claim. In addition to the Separation Agreement and Property Settlement, a modification to that agreement dated August 22, 2001, required Mr. Seigel to pay monthly alimony to Ms. Seigel of $842, and a Consent Order for Permanent Child Support dated August 29, 2001, required Mr. Seigel to pay monthly child support of approximately $800.

Under the terms of the Separation Agreement and Property Settlement, the parties retained their respective cars and retirement benefits, and Ms. Seigel received the house subject to the mortgage of approximately $65,000 and the home equity credit line with a balance of $50,000. Ms. Seigel agreed to pay the mortgage and to hold Mr. Siegel harmless with respect to that indebtedness. Separation Agreement and Property Settlement ¶ 7A. Mr. Seigel agreed to pay the line of credit and to hold Ms. Seigel harmless with respect to that debt. Separation Agreement and Property Settlement ¶ 5. Mr. Seigel also agreed to maintain insurance upon himself for the benefit of the children and insurance upon the children to benefit both parties.

Mr. Siegel made his alimony and child support payments, but had difficulty making the full line of credit payment. The bank and Ms. Seigel agreed that Mr. Seigel could make interest only

payments on the line of credit, which he did until the time of his chapter 13 bankruptcy filing, and at that point the payments stopped. After the debtor filed for bankruptcy relief, the bank looked to Ms. Seigel to make the line of credit payments. Ms. Seigel, who was (and still is) employed at a salary of approximately $40,000 per year, was able to make the mortgage payments, but was unable to make both the mortgage payments and the line of credit payments. Her solution to that predicament was to get a new mortgage that paid off the first mortgage (which had been reduced to $12,000) and the $50,000 line of credit and had a monthly payment she could afford.

In essence, she paid the $50,000 line of credit and contends that the debtor's obligation to indemnify her and to hold her harmless with respect to that obligation is a domestic support obligation, and thus she is entitled to a priority claim. Her position is that the debt is a domestic support obligation because it is in the nature of support. Specifically, she maintains that at the time of the Separation Agreement and Property Settlement she could not afford to pay both the mortgage and the line of credit and that she and her children could not stay in her residence unless Mr. Seigel supported her by making the line of credit payments. Furthermore, she argues that the line of credit had been used to meet ordinary household expenses and that the line of credit indebtedness was incurred when Mr. Seigel was the family's breadwinner and was responsible for the family's support. Mr. Seigel contends that his obligation to indemnify Ms. Seigel is a part of their property settlement and that Ms. Seigel's claim is a nonpriority general unsecured claim.

The term domestic support obligation was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23 § 211 (April 20, 2005). "Domestic support obligation" is defined in 11 U.S.C. § 101(14A) as a debt that is –

3

>   (A) owed to or recoverable by–
>     (i) a spouse, former spouse or child of the debtor or such child's parent. . .
>                              * * *
>   (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>   (D) not assigned to a nongovernmental entity . . . .

11 U.S.C. § 101(14A).

Although the definition of domestic support obligation was added to the Bankruptcy Code by BAPCPA, the concept of giving a priority to alimony and support obligations is not new. Prior to BAPCPA, claims for alimony, maintenance or support were entitled to a seventh priority, and as priority claims, payment in full through the plan was a chapter 13 plan confirmation requirement under § 1325(a)(1) and § 1322(a)(2). Also, prior to BAPCPA, claims for alimony, maintenance and support were nondischargeable in chapter 7 cases pursuant to § 523(a)(5) and § 727(b).

Ultimately, the question before the court is whether the debt is in the nature of support, or whether it is part of a property settlement. As this court explained in <u>In re Sewell</u>, Case No. 07-0777-5-ATS (Bankr. E.D.N.C. Jan. 3, 2008), if the claim arises from an agreement between the parties, the determining factor is the intent of the parties at the time the agreement was reached. Unfortunately, at the time of most separation agreements, the parties are primarily interested in how much will be paid and not how the obligation will be characterized. To determine the parties' intention, the court must consider not only the terms of the agreement, but also the overall circumstances of the parties. Some of the factors that are relevant include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

Sawtelle v. Keech (In re Keech), Adv. Pro. No. L-03-00109-8-AP at 6-7 (Bankr. E.D.N.C. Jan. 7, 2004) (citations omitted). See also Zeitchik v. Zeitchik (In re Zeitchik), 369 B.R. 900, 904 (Bankr. E.D.N.C. 2007).

The fact that the debtor's obligation to be responsible for the line of credit is contained in the Separation Agreement and Property Settlement, which deals primarily with the division of property, and the debtor's obligations to pay alimony and child support are contained in two other documents supports the debtor's contention that his agreement to be responsible for the line of credit is part of the property settlement.

It is true that at the time of the separation, Ms. Seigel did not have sufficient income to make the payments due under both the mortgage and the line of credit, but she is by all appearances intelligent, well educated, and resourceful, and was capable of supporting herself and her children with the help the alimony and child support the debtor was to pay. Her argument that the line of credit advances were used to pay household expenses is not persuasive, because the key determination is the parties' intention at the time of the separation, not how the debt was incurred.

Also, there is no suggestion that Mr. Seigel derived any tax benefit from the line of credit payments that he made, which suggests that the payments were in the nature of a property settlement. Paragraph 13 of the Separation Agreement and Property Settlement dealt with "tax

matters," but that paragraph does not mention the tax consequences of the line of credit payments. A final factor supporting the court's determination that the obligation is a part of the property settlement is that Mr. Siegel's payments did not terminate in the event of the remarriage or death of Ms. Siegel.

Ms. Siegel has not met her burden of proving that her claim is a domestic support obligation, and, accordingly, the debtor's objection to Ms. Seigel's priority claim is **ALLOWED**.  Ms. Siegel's claim is allowed as a general unsecured claim.

    **SO ORDERED**.

**END OF DOCUMENT**